[No. 1937-1.   Division One.   November 26, 1973.]

SUE J. CLEAVER, *Respondent,* v. CHARLES J. CLEAVER, *Appellant.*

*Olwell, Boyle & Hattrup* and *Clinton H. Hattrup,* for appellant.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow* and *Llewelyn G. Pritchard,* for respondent.

WALTERSKIRCHEN, J.*—This is an appeal by the husband from those portions of the decree of divorce which distributed the parties' property between the appellant and his wife, and which awarded respondent permanent alimony, allowed the respondent attorney's fees and costs, and ordered the appellant to continue support money payments for each child for at least 4 undergraduate years of college on certain conditions.

The parties were married in 1951 and have five children born, respectively, June 17, 1952, October 27, 1954, December 17, 1955, May 20, 1960, and June 4, 1962. During the marriage the parties had accumulated property valued in excess of $200,000. At the time of the trial the appellant was 51 years of age and had been employed as a pilot with the same airline for 28 years. He was earning approximately $46,000 annually and had vested retirement rights. The respondent, at the time of the trial, was 49 years of

---

*Judge F. A. Walterskirchen is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

age. Her health future was found to be questionable. The evidence indicated that she had not been employed outside the home since marriage. She was a high school graduate and prior to her marriage attended a business college for a short period and worked in both a dentist's and a doctor's office, and thereafter as a secretary. She also attended a beauty school for a year and worked in various beauty salons, finally managing a beauty shop of her own.

Appellant contends that the trial court abused its discretion when it distributed property to the respondent valued by the court at $116,000 and only distributed to the appellant property the court valued at $96,000. Appellant further contends that the trial court grossly undervalued the properties distributed to the respondent and at the same time grossly overvalued the properties awarded the appellant. Further, appellant says the court did not consider the fact that a part of his pension rights were acquired prior to marriage and therefore to that extent were separate property.

■ We have reviewed the evidence concerning the value of the various items of property before the trial court for distribution to the parties and find that the values adopted by the trial court are supported by substantial evidence. A trial court's finding of fact must be accepted as a verity where there is substantial evidence to support it. *Friedlander v. Friedlander*, 80 Wn.2d 293, 304, 494 P.2d 208 (1972); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

■ It has been consistently held that a trial court has a wide discretion in dividing the property in a divorce action and its disposition will not be interfered with absent a manifest abuse of discretion. *Baker v. Baker*, 80 Wn.2d 736, 498 P.2d 315 (1972); *Mayo v. Mayo*, 75 Wn.2d 36, 448 P.2d 926 (1968); *Lucker v. Lucker*, 71 Wn.2d 165, 426 P.2d 981 (1967). Abuse of discretion has not been shown unless the discretion has been exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable. *Friedlander v. Friedlander, supra; High v. High*, 41 Wn.2d 811, 252 P.2d 272 (1953).

■ RCW 26.08.110 directs that a divorce decree shall make such disposition of the property of the parties as shall appear just and equitable. An equitable division of the property involved does not entail a right to a strictly equal division thereof. *Friedlander v. Friedlander, supra; Ovens v. Ovens,* 61 Wn.2d 6, 376 P.2d 839 (1962); *Webster v. Webster,* 2 Wash. 417, 26 P. 864 (1891).

In *Baker v. Baker, supra* at 746, the court detailed the factors which are to be considered by the trial court in making a disposition of the property of the parties to a divorce action:

> They are the merits of the parties; the condition in which they will be left by the divorce; the burdens imposed by child custody; the necessities of the wife and the financial ability of the husband; the age, health, education and employment history of the parties; the future earning prospect of the parties; the sources through which the property was acquired by the parties during the marriage and what properties each brought into or contributed to the community property; and the kinds of property left to be divided at the divorce.

*See also Friedlander v. Friedlander, supra; DeRuwe v. DeRuwe,* 72 Wn.2d 404, 433 P.2d 209 (1967).

In this case the trial court took into consideration the age, health, education, employment history, future earnings prospects, custody of the children, sources of the property, including the fact that part of the pension rights were separate property of appellant, as well as the fact that in addition to his vested pension rights the appellant would also qualify for Social Security. In light of the evidence on all of the criteria to be considered by the court, we are unable to say that the court abused its discretion in dividing the property of the parties as it did.

■ Appellant claims the trial court erred in ordering him to continue to make payments for the support and education of the children for at least the 4 undergraduate years of each child's higher education. He contends that insofar as the decree requires him to provide for the support and education of a child beyond the age of 18 years, it

is invalid. We agree. The law is clear that a divorce court is without jurisdiction to enter an order requiring a parent to provide for support and education after a child attains the age of majority. *Baker v. Baker, supra* at 742; *Sutherland v. Sutherland,* 77 Wn.2d 6, 8, 459 P.2d 397 (1969). At the time the decree was entered in the instant case, the age of majority was 18 years. RCW 26.28.010 (Laws of 1971, 1st Ex. Sess., ch. 292, § 1).

Respondent contends that the legislation lowering the statutory age of majority to 18 years was not intended to affect a parent's duty to support his children to the age of 21 years, and, therefore, the trial court's judgment should be upheld at least to the extent of requiring support money payments for education until each child attains the age of 21. Respondent argues that her position is supported by the fact that the court in *Baker v. Baker* refused to rule that under Laws of 1971, 1st Ex. Sess., ch. 292, § 1, a divorced parent's obligation of support ceases when the child reaches 18 years of age. However, in *Baker v. Baker* the court was concerned with a decree that had been entered prior to the effective date of Laws of 1971, 1st Ex. Sess., ch. 292, § 1, and stated specifically at page 742:

> Whether the legislation lowering the age of majority to 18 years applies, under RCW 26.08.110, to support and education provisions in divorce decrees entered subsequent to August 9, 1971, is not properly before us at this time since the rights of the parties to this action are not affected thereby. We therefore do not decide that question.

The refusal of the court to rule on a question not before it is that, no rule. We consider such refusal to be of no significance.

Six days before enacting the legislation lowering the age of majority to 18 years, the legislature defined a "dependent child" as

> any person under the age of twenty-one who is not otherwise emancipated, self-supporting, married, or a member of the armed forces of the United States.

RCW 74.20A.020(3) (Laws of 1971, 1st Ex. Sess., ch. 164, § 2). Respondent argues that the fact that the legislature so defined "dependent child" only 6 days before lowering the statutory age of majority demonstrates that the legislation lowering the age of majority was not intended to affect child support obligations. We do not agree. The purpose of Laws of 1971, 1st Ex. Sess., ch. 164, was to facilitate the collection of support money from parents responsible for child support who fail to meet that responsibility. In most instances the duty of support was spelled out in a court order or decree of divorce. The legislature was aware when it enacted Laws of 1971, 1st Ex. Sess., ch. 164, that many orders and decrees previously entered provided for child support payments to continue until the child reached the age of 21 years. So there would be no confusion concerning orders which might subsequently be entered, the legislature added a proviso:

That where there has been a superior court order or final decree of divorce, the debt shall be limited to the amount of said court order or decree.

RCW 74.20A.030 (Laws of 1971, 1st Ex. Sess., ch. 164, § 3).

Much more indicative of the intent of the legislature regarding child support when it enacted Laws of 1971, 1st Ex. Sess., ch. 292, § 1, is the fact that in amending RCW 21.24 and 21.25, the gifts to minors act, the legislature said "[a] 'minor' is a person who has not attained the age of eighteen years" (Laws of 1971, 1st Ex. Sess., ch. 292, §§ 30, 33), notwithstanding the fact that each act makes provisions for the use of funds for "the minor's support, maintenance or education." Laws of 1971, 1st Ex. Sess., ch. 292, §§ 31, 34.

Respondent further argues that education is so essential that a child without it may be deemed a cripple and come within the equitable doctrine of *Schultz v. Western Farm Tractor Co.*, 111 Wash. 351, 190 P. 1007, 14 A.L.R. 514 (1920), thus allowing payments for support to be compelled beyond the age of majority. We find this argument to be without merit or support in the record. The court

takes judicial notice of the fact that many persons who have not pursued formal education beyond the age of 18 years are successful adults.

We hold that the trial court erred in requiring the appellant to continue support payments for the 4 undergraduate years of each child's higher education insofar as compliance with the decree would require the appellant to provide for support for his children beyond the age of 18 years. The decree, therefore, must be modified to terminate support payments for each child when such child reaches 18 years of age.

Appellant contends that the trial court erred when it entered finding of fact No. 16 and based thereon conclusion of law No. 9, providing for the payment of $500 per month alimony starting August 1, 1972, and continuing for 4 years, and then alimony of $400 per month until such time as the husband either remarries, loses his flight status, or reaches the age of 60, and thereafter alimony of $300 per month for life.

■ In the granting of alimony the court must be governed by the necessities of the wife and the financial abilities of the husband to pay. *Baker v. Baker*, 80 Wn.2d 736, 744, 498 P.2d 315 (1972); *Kelso v. Kelso*, 75 Wn.2d 24, 27, 448 P.2d 499 (1968). Further, it is not the policy of the law to place a permanent responsibility upon a divorced spouse to support a former wife; she is under an obligation to prepare herself so that she might become self-supporting. *Berg v. Berg*, 72 Wn.2d 532, 434 P.2d 1 (1967). Nor is the wife entitled to maintain her former standard of living as a matter of right. *Friedlander v. Friedlander, supra* at 297; *Morgan v. Morgan*, 59 Wn.2d 639, 644, 369 P.2d 516 (1962). "It is the policy of this state to place a duty upon the wife to gain employment, if possible." *Dakin v. Dakin*, 62 Wn.2d 687, 692, 384 P.2d 639 (1963).

■ The trial court, in fixing its award of alimony, properly took into consideration respondent's age, health, appellant's ability to pay, and "earnings for the future," but

improperly also considered the life-style of each of the parties. The court entered finding of fact No. 8:

The plaintiff will be 50 years of age in December, 1972. She is a high school graduate. Her health future is questionable. She does not have the ability to do work of a strenuous nature. She cannot stand or sit for long periods of time.

The court did not include in its findings the fact that respondent had prior to her marriage engaged in secretarial work and qualified as a beauty operator and managed a beauty shop. In view of the fact that the court awarded the respondent $116,000 of property and that the youngest child will reach 18 years of age on June 4, 1980, at which time the support obligation of both parents will terminate, it is reasonable to assume that a substantial portion of the property awarded will become income producing for the respondent. It is also reasonable to assume that in the intervening 7 years, if respondent makes a reasonable effort to prepare herself, she may be able to be gainfully employed and thus maintain herself. In view of the policy of this state with respect to alimony, we hold that the court erred in granting permanent alimony and that the alimony should cease when the youngest child becomes 18 years of age.

Appellant asserts that the court erred when it entered finding of fact No. 32:

Plaintiff's attorneys have devoted a substantial amount of time to the discovery, preparation and trial of this case. They have rendered substantial services to the plaintiff in the handling of this case. In addition, the plaintiff has incurred costs for filing fees, depositions and copying witnesses and appraisers fees. That the defendant shall pay said cost up to the amount of $3,200.00. That the reasonable value of the legal services rendered to the plaintiff which it would be just and equitable for the defendant to pay is $6,800.00.

Appellant further assigns error to conclusion of law No. 19, based thereon:

The defendant shall pay to the plaintiff the sum of $6,800.00 for the credit on her attorney's fees incurred

herein. The defendant shall also pay to the plaintiff all costs incurred for filing fees, depositions, copying, witnesses and appraisal fees up to the amount of $3,200.00.

■ The amount of attorney's fees awarded to the wife in a divorce case rests in the sound discretion of the trial court but must be based upon the financial need of the wife and the ability of the husband to pay. *Koon v. Koon,* 50 Wn.2d 577, 581, 313 P.2d 369 (1957); *Coons v. Coons,* 6 Wn. App. 123, 126, 491 P.2d 1333 (1972). Attorney's fees may not be allowed when the wife has ability to pay since she is not entitled to free litigation. *Bang v. Bang,* 57 Wn.2d 602, 611, 358 P.2d 960 (1961).

In making distribution of the property between the parties, the trial court announced that it was doing so on the basis of a 6 to 5 ratio. The court then distributed to the respondent property it had valued at $116,000, including the only cash of about $4,000. The court distributed to appellant property it had valued at $96,000. The court also ordered the appellant to pay, within 60 days, taxes on property awarded to the respondent.

Since the property awarded respondent more than satisfied the announced ratio, it is apparent that the court in ordering payment of respondent's attorney's fees in the sum of $6,800 was not doing so as part of the division of property. The findings show appellant was earning $3,833.33 per month from which to pay $1,500 in support and alimony, leaving $2,333.33 before withholding and other required deductions, from which he must pay his own obligations, including his own attorney. It thus appears respondent is in as good a position to pay her attorney's fee as is appellant. There being no proof of need, the trial court exceeded its jurisdiction when it allowed respondent attorney's fees.

The case is remanded to the trial court for the entry of an order eliminating the provision for the payment of attorney's fees and costs, excluding pretrial attorney's fees and costs, terminating the alimony when the youngest child attains the age of 18 years, and terminating the child

support when each child is emancipated, self-supporting, or attains the age of 18 years.

SWANSON, C.J., and FARRIS, J., concur.

Petition for rehearing denied March 5, 1974.