[No. 9243-0-I.   Division One.   August 23, 1982.]

*In the Matter of the Marriage of* MARGARET BROSSMAN, *Respondent, and* WILLIAM R. BROSSMAN, *Appellant.*

*Marcia A. Mellinger,* for appellant.

*Wolfgang Anderson* and *Malcolm L. Edwards,* for respondent.

WILLIAMS, J.—In this appeal from a decree of dissolution distributing property between the parties, the issues concern the separate property characterization of a house, a maintenance award, certain findings of fact and conclusions of law and attorney's fees. We affirm.

The facts are as follows. A decree of dissolution of the marriage of Margaret and William Brossman was entered on July 30, 1980. The Brossmans, now in their early fifties, were married in 1954 and have four children all of whom are emancipated. Shortly after the marriage, Margaret's mother died leaving her a duplex in Seattle worth $8,737, a $9,178 bank account, and some items of personal property.

From 1955 until 1958 the Brossmans lived in one unit of the duplex and rented the other unit. In July 1958, they purchased a home in Bothell with an $8,171 down payment

from Margaret's separate account, the $16,000 balance secured by a mortgage assumed by the Brossmans' marital community. The couple continued to lease the duplex units, paying the mortgage with duplex rental proceeds. In 1961 the Brossmans sold the duplex and used the $80 monthly real estate contract payments from the sale toward their mortgage payments, generally between $135 and $170 a month, making up the difference with William's salary. In January 1973 the duplex real estate sales contract was paid off and the remaining mortgage on the Bothell home was paid by William's salary until February 1975, when the mortgage was satisfied.

The court concluded the Bothell home was Margaret's separate property and awarded it to her subject to a lien in favor of William for $3,562.50, for the funds he contributed toward the mortgage and the labor he provided to maintain and improve the property. The court stated in additional findings of fact and conclusions of law, entered after the notice of appeal was filed, that the property should be awarded as provided in the decree of dissolution "regardless of the characterization" of the home. The court also awarded Margaret maintenance of $200 a month to terminate upon her death or remarriage, or William's retirement, and ordered William to pay her $500 for her attorney's fees.

The first issue is whether the court erred in its distribution of the assets because it characterized the Bothell home as Margaret's separate property. William claims the home must be considered a community asset as a matter of law because it was purchased during marriage and the community pledged its credit on the mortgage. *Katterhagen v. Meister,* 75 Wash. 112, 134 P. 673 (1913). He argues that the court's mischaracterization of the home rendered the property distribution defective, and that the case must be remanded for redetermination of the property division with the major asset correctly characterized. *Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966).

Before awarding the Bothell home to Margaret, the court made detailed findings, which are not challenged, as

to the source of the funds used to pay for it. Technically, the house may have been community property because it was deeded to the parties as husband and wife and community credit was pledged on the mortgage. *In re Estate of Dougherty,* 27 Wn.2d 11, 176 P.2d 335 (1947). But that does not mean the trial court was prevented from recognizing the wife's contributions from her separate property in determining how the house should be equitably divided among the parties. *Estate of Dougherty,* at 20–22.

> "Characterization of the property . . . is not necessarily controlling; the ultimate question being whether the final division of the property is fair, just and equitable under all the circumstances."

*In re Marriage of Hadley,* 88 Wn.2d 649, 656, 565 P.2d 790 (1977), quoting *Baker v. Baker,* 80 Wn.2d 736, 745–46, 498 P.2d 315 (1972).

The trial court had a thorough understanding of the source of all funds used to pay for the house and stated that, even if considered a community asset, the house would still be awarded to Margaret. We cannot say that the results reached by the court in its discretionary disposition of the house were "clearly untenable or manifestly unreasonable." *Friedlander v. Friedlander,* 80 Wn.2d 293, 298, 494 P.2d 208 (1972). Therefore, we find no abuse of discretion in awarding the house to Margaret subject to William's lien for $3,562.50.

The second issue is whether the trial court abused its discretion in awarding Margaret $200 per month as maintenance until she remarries, dies or William retires. William argues that the trial court abused its discretion in making that award, as it was excessive and violated the statutory policy that maintenance is for the purpose of rehabilitating the spouse receiving it, not to punish the other spouse for marital misconduct. RCW 26.09.090(1).

The amount and duration of maintenance is for the trial court's discretion to be reversed on appeal only for manifest abuse. *In re Marriage of Nicholson,* 17 Wn. App. 110, 114, 561 P.2d 1116 (1977). The trial court found:

Husband is gainfully employed as a carpenter for Metro with a monthly net income in excess of $1,300.00, by his testimony $1,500.00 per month. The monthly net income of Margaret Brossman is $600.00 per month. After marriage, [she] quit her employment to provide a home for her husband and children and has had menial and sporadic employment at various and sundry times, all of which netted to her the approximate sum of $2,000.00 for all of the time of said part–time employment. The employment concerned caring for elderly ladies and catering. [Margaret] has had her present job since 1978 in February of said year working for the National Conference of Christians and Jews. [She] has medical problems including varicose veins, hardening of the arteries, is anemic and has arthritis and sustained an injury to her neck through her husband which injury in her neck has been beset by arthritis. All of said medical problems have made working difficult for her. The court finds that her upward mobility, as far as earning capacity, has not only been inhibited, but her marketability has been greatly reduced and that her present income and job result in a great deal of tolerance from her employer, who does not discriminate against age, Margaret Brossman being 50 years of age, that said employer further takes into consideration her disabilities and that she can work under her own pressures and time frame and that her capacity to earn more money under any other medium is unlikely. [Margaret's] future earning potential and capacity to earn a living in a self sustaining manner has been impaired by virtue of the length of marriage, length of absence from the job market in any meaningful manner and her age and health. The standard of living of the parties during the marriage has not been lavish.

Finding of fact 4.

The court further finds that the husband through his job has a great deal of economic stability. The court further finds the wife is in need of at least $200.00 per month in order to survive and the court further finds that the husband has the ability to pay said sum, if not a greater sum, without changing his standard of living and style of life. The court finds that after 24 years of caring for the parties children and for the [husband], in light of the medical problems of the wife, her age, capacity of the

*[husband's] income and the need of the wife in order to survive, $200.00 per month is a reasonable sum for [William] to pay to [Margaret] until such time that [she] remarries or dies or [William] retires whichever of said events occur first. The court, in fixing said amount of maintenance, finds that wife's employment potential is, indeed, limited, that her health is not good and further finds that [William] has received twenty–three years of rent free living on account of wife's inheritance and that, indeed, the payment of 12 to 15 years, unless wife sooner remarries or dies, is a further consideration that the court entertained in making the maintenance award, although, secondary to the factors enumerated in the statute concerning maintenance.*

Finding of fact 5.

Given the court's findings concerning Margaret's needs, her ability to support herself, William's ability to pay and the parties' standard of living during their marriage, the maintenance award of $200 per month until Margaret dies or remarries, or William retires cannot be considered an abuse of discretion. *Friedlander v. Friedlander,* 80 Wn.2d at 298; *Mayo v. Mayo,* 75 Wn.2d 36, 448 P.2d 926 (1968); *In re Marriage of Nicholson, supra;* RCW 26.09.090.

■ The third issue is whether the trial court erred in entering additional findings of fact and conclusions of law after the notice of appeal was filed. CR 52(b) permits the court to "make additional findings and . . . amend the judgment accordingly" on motion for reconsideration pursuant to CR 59. William made a timely motion for reconsideration pursuant to CR 59(a) and the trial court was entitled, pursuant to CR 52(b), to make additional findings of fact and conclusions of law. The filing of the notice of appeal had no effect on the court's authority to enter additional findings as RAP 7.2(e)(1) provides that the "trial court has authority to hear and determine . . . post–judgment motions authorized by the civil rules . . ." As far as we can determine from the record, counsel for William Brossman waived the 5–day presentation requirements of CR 52(c), and, therefore, the court's further findings of fact

and conclusions of law were properly entered.

■ The fourth and final issue concerns attorney's fees. William argues that the trial court erred in awarding Margaret $500 attorney's fees, and Margaret asks for appellate attorney's fees and costs. The trial court did not abuse its discretion in awarding Margaret $500 in attorney's fees, when she incurred legal expenses of over $3,000 as a result of the trial. *In re Marriage of Hadley,* 88 Wn.2d at 659. Margaret has not submitted an affidavit detailing attorney's fees and costs incurred on appeal, as required by RAP 18.1(c); therefore the request for appellate expenses is denied.

The judgment is affirmed.

JAMES, J., concurs.

DURHAM, A.C.J. (dissenting in part)—I dissent from the majority's disposition of the property distribution and the maintenance award.

I am, of course, aware that such matters are left to the sound discretion of the trial court, whose decision is to be disturbed only upon a showing of a manifest abuse of discretion. *Mayo v. Mayo,* 75 Wn.2d 36, 448 P.2d 926 (1968); *In re Marriage of Nicholson,* 17 Wn. App. 110, 561 P.2d 1116 (1977). However, the trial court does not have unfettered freedom to exercise its personal judgment; it may exercise its discretion only within certain broad guidelines. *Rehak v. Rehak,* 1 Wn. App. 963, 966, 465 P.2d 687 (1970). I believe that the majority, in deferring to the discretion of the trial court, has forsaken its duty to rectify the lower court's errors.

First, the trial court erroneously characterized the parties' major asset, the Bothell home, as entirely Margaret's separate property. When property is acquired during marriage, the test of its separate or community character is whether or not it was acquired with community funds and community credit, or separate funds and the issues and profits thereof. The presumption is that the property is

community property, but this presumption may be rebutted. *Finley v. Finley,* 47 Wn.2d 307, 287 P.2d 475 (1955); *Katterhagen v. Meister,* 75 Wash. 112, 134 P. 673 (1913). The status of the property is fixed at the time it is acquired. *Katterhagen,* at 115. The fact that one spouse later pays the debt out of his or her separate funds does not alter the character of the property. *Katterhagen,* at 114. When property is financed using community credit, it must be established by satisfactory evidence that the property is to be the separate property of one of the spouses. *See In re Estate of Dougherty,* 27 Wn.2d 11, 23, 176 P.2d 335 (1947).

As the majority concedes, the Bothell home was community property to the extent that it was purchased using community credit. Community credit was pledged on the mortgage and the property was deeded to the parties as husband and wife. However, the trial court found that the Bothell home was Margaret's separate property because (1) mortgage payments were made from her separate funds, and (2) title was taken in both parties' names only because the realtor so required. As to the first reason, the trial court is clearly in error. *See Katterhagen v. Meister, supra* at 114. Secondly, that title was taken in both parties' names only because the realtor so required is not satisfactory evidence that the house is separate property.

The majority excuses the trial court's mischaracterization of the property by noting that classification of the property as separate or community is not necessarily controlling, and that the ultimate question is whether or not the division of the property is just and equitable under all the circumstances. *In re Marriage of Hadley,* 88 Wn.2d 649, 656, 565 P.2d 790 (1977). However, the trial court must have in mind the correct character and status of the property as community or separate before it divides the property. RCW 26.09.080; *Blood v. Blood,* 69 Wn.2d 680, 682, 419 P.2d 1006 (1966); *In re Marriage of Martin,* 22 Wn. App. 295, 297, 588 P.2d 1235 (1979). Therefore, I believe that the case should be remanded for proper characterization of the property and a property division that is just and equitable.

I also believe that the trial court abused its discretion in awarding Margaret $200 per month until she remarries or dies, or until William retires. Under the trial court's decree, William could conceivably be paying maintenance for 12 to 15 years. It is not the purpose of the law to place a permanent responsibility upon one party to support a former spouse indefinitely. He or she is under an obligation to prepare to become self–supporting. *Berg v. Berg,* 72 Wn.2d 532, 534, 434 P.2d 1 (1967); *Cleaver v. Cleaver,* 10 Wn. App. 14, 20, 516 P.2d 508 (1973); *see Dakin v. Dakin,* 62 Wn.2d 687, 692, 384 P.2d 639 (1963). In effect, the trial court has ordered a permanent maintenance award which is contrary to public policy.

I would remand the case to the trial court for reconsideration of the property disposition and the maintenance award.

Reconsideration denied September 27, 1982.

Review denied by Supreme Court January 21, 1983.